REINHARDT, Circuit Judge,
concurring.
We are compelled to deny Mr. Magana Ortiz’s request for a stay of removal be *967 cause we do not have the authority to grant it. We are not, however, compelled to find the government’s action in this case fair or just.
The government’s insistence on expelling a good man from the country in which he has lived for the past 28 years deprives his children of their right to be with their father, his wife of her right to be with her husband, and our country of a productive and responsible member of our community. Magana Ortiz, who first entered the United States at 15, is now 43 years old, and during his almost three decades here has raised a family and built a successful life. All of his children, ages 12, 14, and 20, were born in this country and are American citizens, as is his wife. His eldest daughter currently attends the University of Hawaii, and he is paying for her education.
Since coming to the United States, Ma-gana Ortiz has become a respected businessman in Hawaii and well established in the coffee farming industry. He has worked with the United States Department of Agriculture in researching the pests afflicting Hawaii’s coffee crop, and agreed to let the government use his farm, without charge, to conduct a five-year study. In his time in this country Magana Ortiz has built a house, started his own company, and paid his taxes. Although he apparently has two convictions for driving under the influence, the latest of them occurred fourteen years ago, and he has no history of any other crimes. Indeed, even the government conceded during the immigration proceedings that there was no question as to Magana Ortiz’s good moral character.[1]
After his immigration case concluded with a decision to remove Magana Ortiz because of his 1989 illegal entry into the United States, he filed for a stay of removal in September 2014. That stay was granted, allowing him to remain with his family and pursue available routes to legal status. On November 2, 2016, Magana Ortiz filed for an additional stay of removal. Without any explanation, the government on March 21, 2017 reversed its position, and ordered him to report for removal the next month. A subsequent application for a stay was similarly denied, and on May 10, 2017, Magana Ortiz went to the district court, where he filed an emergency request for a stay of removal for a period of nine months. That request was denied, and on May 17, 2017, he appealed to this court to intervene.
Magana Ortiz now asks us to stay his imminent removal. Because we are without authority to do so, he will be returned to Mexico, after having spent 28 years successfully building a life and family in this country. He will also be subject to a ten-year bar against his return, likely forcing him to spend a decade deprived of his wife, children, and community.
This was not the necessary result. Ma-gana Ortiz is currently attempting to obtain legal status on the basis of his wife’s and children’s citizenship, a process that is well underway. It has been over a year since his wife, Brenda, submitted her application to have Magana Ortiz deemed her immediate relative. This August, his eldest daughter, Victoria, will turn 21, and will also be able to file an application for her father. All Magana Ortiz asked for in requesting a stay was to remain in this country, his home of almost three decades, while pursuing such routes to legal status. It was fully within the government’s power to once more grant his reasonable request. *968 Instead, it has ordered him deported immediately.
In doing so, the government forces us to participate in ripping apart a family. Three United States citizen children will now have to choose between their father and their country. If they leave their homeland with their father, the children would be forced to move to a nation with which they have no connection. All three children were born in the United States; none has ever lived in Mexico or learned Spanish. Moving with their father would uproot their lives, interrupt their educations, and deprive them of the opportunities afforded by growing up in this country. If they remain in the United. States, however, the children would not only lose a parent, but might also be deprived of their home, their opportunity for higher education, and their financial support.[2] Subjecting vulnerable children to a choice between expulsion to a foreign land or losing the care and support of their father is not how this nation should treat its citizens.
President Trump has claimed that his immigration policies would target the “bad hombres.” The government’s decision to remove Magana Ortiz shows that even the “good hombres” are not safe.[3] Magana Ortiz is by all accounts a pillar of his community and a devoted father and husband. It is difficult to see how the government’s decision to expel him is consistent with the President’s promise of an immigration system with “a lot of heart.” I find no such compassion in the government’s choice to deport Magana Ortiz.
We are unable to prevent Magana Ortiz’s removal, yet it is contrary to the values of this nation and its legal system. Indeed, the government’s decision to remove Magana Ortiz diminishes not only our country but our courts, which are supposedly dedicated to the pursuit of justice. Magana Ortiz and his family are in truth not the only victims. Among the others are judges who, forced to participate in such inhumane acts, suffer a loss of dignity and humanity as well. I concur as a judge, but as a citizen I do not.

. The original Hawaii court records are somewhat confusing with respect to the second DUI conviction. If it did in fact occur, it is apparent that, as with the first violation, Ma-gana Ortiz was at most fined, and no sentence nor term of probation was imposed. In any event, Magana Ortiz’s driving record is not the basis of his removal.

. The family's right to occupy their home will terminate upon Magana Ortiz’s removal.

. On January 25, 2017, the President signed a series of executive orders dismantling the system of priorities that had previously guided Immigration and Customs Enforcement and Border Patrol in determining whom to deport. The orders also gave far greater authority to individual agents and officers, who are now removing non-citizens simply because they are here illegally, regardless of whether they have committed any offense. In light of the breadth of these orders and the lack of any apparent limit on agents’ discretion, the undocumented must now choose between going to work, school, hospitals, and even court, and the risk of being seized. See James Queally, ICE Agents Make Arrests at Courthouses, L.A. Times, March 16, 2017.